**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERTO C. RIVERA,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-10-0505** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **GOVERNOR ED RENDELL, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**I.    Introduction**

On March 5, 2010, Roberto C. Rivera, an inmate at Dallas State Correctional

Institution (SCI-Dallas), in Dallas, Pennsylvania, filed a *pro se* civil rights action pursuant

to 42 U.S.C. § 1983,[1] suing twenty-six defendants for various reasons related to the loss

of his single cell status.[2]  Liberally construing Mr. Rivera's Complaint, he sets forth the

following claims: (1) sixteen supervisory defendants failed to properly supervise

subordinates at SCI-Dallas who improperly withdrew his single cell status; (2) the Hearing

---

[1]  For the convenience of the reader of this document in electronic format, hyperlinks
to authority cited herein have been inserted.  The Court accepts no responsibility for, and
does not endorse, any product, organization, or content any hyperlinked site, or at any site
to which that site might be linked.  The Court accepts no responsibility for the availability or
functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the
user to some other site does not affect the opinion of this Court.

[2]  The Defendants in this action are divided into two groups:  (1) Commonwealth of
Pennsylvania employees; and (2) physicians employed by the contract health care provider
at SCI-Dallas.  Each  group is represented by separate counsel.

Examiner violated his Due Process rights during a misconduct hearing; (3) medical staff were deliberately indifferent to his mental health issues by failing to timely renew his psychotropic medications and by failing to order that he be single celled due to his mental health issues; (4) prison staff were deliberately indifferent to his mental health needs when they revoked his single cell status; and (5) prison officials violated his rights under the American with Disabilities Act (ADA) by failing to timely process his request for a single cell due to his mental health issues. (Doc. 1, Compl.) Defendants' motions to dismiss are ripe for disposition. The motions seeks to dismiss all claims against the supervisory defendants; claims related to Mr. Rivera's misconduct proceedings; and the Eighth Amendment deliberate indifference claims lodged against Drs. Jesse and Kale.

Also pending before the Court is Mr. Rivera's Motion to Amend the Complaint (Doc. 70) seeking to add three new defendants Corrections Health Care Administrator Stanifski, G-Block Unit Manager Mick Breuninger, and L-Block Unit Manager Michael Skutack as defendants. Mr. Rivera alleges that these defendants retaliated against him for the filing of his present action on July 9, 2012, when he was removed from L-Block and moved to G-Block without due process and issued him a retaliatory misconduct. (*Id*.) Mr. Rivera did not submit a brief in support of his motion to amend, or a draft supplemental complaint.

For the reasons that follow, the defendants' motions to dismiss will be granted in part and denied in part and Mr. Rivera's motion to amend will be denied.[3]

---

[3] The Court notes that although the medical defendants' (Kale and Jesse) motion to dismiss is alternatively identified as a motion for summary judgment, no statement of materials facts or exhibits were offered in support of their motion as required by M.D. Local Rule 56.1. Therefore, the Court will construe their motion strictly as one filed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    Allegations of the Complaint

In September 2008, Roberto Rivera enjoyed single cell housing status at SCI-Dallas and regularly took prescribed psychotropic medication.  At some point in 2008, Mr. Rivera reported to pill line only to learn that his treating psychiatrist, Dr. Kale "had forgotten to reorder his medication."  (Doc. 1, Compl. at ¶ 1.)  Dr. Kale, who was preparing to leave the institution, advised Mr. Rivera that he would promptly reorder his psychotropic medication.  (*Id*.)  He also advised Mr. Rivera that "they" were reviewing inmates with single cell status because Governor Rendell ordered the institution to create more bed space within the facility.  (*Id*. at  ¶ 2.)

The next time Mr. Rivera reported for pill line, he learned his medication had not been reordered.  (*Id*. at ¶ 3.)  As Dr. Kale had already left the institution, a nurse advised him to contact SCI-Dallas' Psychology Department.  At this point, due to the lack of his medication, Mr. Rivera started to experience bouts of depression.  (*Id*.)  In November 2008, Mr. Rivera spoke with Dr. Kale's replacement, Dr. Mahich.  Mr. Rivera, who is of Hispanic decent and speaks with an accent, found it difficult to communicate with Dr. Mahich, a Russian who did not speak or understand English well.  Dr. Mahich temporarily renewed Mr. Rivera's medication "until it was determined whether in fact he needed to have a single cell per the new policy being implemented" by Secretary Beard.  (*Id*. at ¶ 4.) Dr. Mahich left SCI-Dallas sometime in December 2008.  (*Id*.)

On December 23, 2008, Michael Goyne, Mr. Rivera's Unit Manager, and Thomas Sokoloski, his counselor, told him that his single cell status was revoked as a result of Governor Rendell's instruction to Secretary Beard "to create more bed space due to

overcrowding in the institution" and that he would be housed with inmate George Ross. (*Id*. at ¶ 5.)  Upon learning this information, Mr. Rivera suffered a nervous breakdown. (*Id*. at ¶ 6.)  He returned to his cell and attempted to commit suicide by lighting himself, and his cell, on fire. (*Id*.)

Mr. Rivera was immediately removed from the burning cell and taken to the medical department where he was placed in a psychiatric observations room (POR). (*Id*. at ¶ 7.) The following day he was seen by Dr. Wittywat, a Chinese psychiatrist with whom he had difficulty communicating. (*Id*.)  Mr. Rivera tried to explain his psychological history to Dr. Wittywat as well as his need for his psychotropic medication and a single cell, but Dr. Wittywat expressed "this was done because they need bed space." (*Id*.)  Later that day, Unit Manager Goyne visited Mr. Rivera in the medical unit and told him he would not be transferred to SCI-Waymart for a psychological evaluation because he felt Mr. Rivera was only "faking it and did not need psychological help." (*Id*. at ¶ 8.)

Mr. Rivera was confined in the POR for approximately 5 days before he was placed in SCI-Dallas' Restricted Housing Unit (RHU), in a single cell, pending his misconduct hearing. (*Id*. at ¶ 9.)  Mr. McKeown, the Hearing Examiner, adjudicated Mr. Rivera's misconduct for arson and the destruction of property.  Mr. McKeown allegedly failed to appoint him an inmate assistant or allow him to call witnesses. (*Id*. at ¶ 74.)  Although Mr. Rivera said he was experiencing severe psychological episodes, and believed himself incompetent, he pled guilty to all charges and was sanctioned to 90 days disciplinary custody. (*Id*. at ¶ 9.)  After his misconduct hearing, Mr. Rivera was double celled in the RHU with inmate Morales. (*Id*. at ¶ 10.)

-4-

While housed in the RHU, Mr. Rivera and Morales had numerous verbal confrontations. When Morales told staff that Mr. Rivera was experiencing violent outbursts and believed he was trying to kill him, unit officers responded by teasing both inmates telling them to kill each other. (*Id*.) Mr. Rivera spoke to Counselor Sokolaski, Psychologist Buffton, Psychologist Lopuhovsky, Psychologist Wienckoski. Grievance Coordinator Lucas, Mental Health Coordinator Taylor, Dr. Jesse and Deputy Superintendent Walsh about his difficulties double celling with inmate Morales. (*Id*. at ¶ 11.) All of these individuals denied that Mr. Rivera suffered from any significant mental health problem even though he had a history of taking psychotropic medication and previously was single celled. (*Id*. at ¶ 12.) These individuals made it clear that regardless of his problems with Morales he would continue to be double celled. (*Id*.) Mr. Rivera was also advised that "if [either inmate reported] ... having repeated physical confrontations with each other[,] then they would each be issued misconducts for fighting". (*Id*.)

In January 2009, Mr. Rivera was criminally charged with two counts of Arson and one count of Institutional Vandalism. (*Id*. at ¶ 13.) During his hearing, District Magistrate Barilla did not understand why Mr. Rivera's was not single celled given his mental health history. He stated that Mr. Rivera should not be housed with other inmates. (*Id*.) Prison officials ignored these instructions and continued to double cell Mr. Rivera. (*Id*. at ¶ 14.)

On March 20, 2009, the Program Review Committee (PRC) reviewed Mr. Rivera's RHU status. (*Id*. at ¶ 15.) Deputy Superintendents Mooney and Walsh were part of the PRC that day. (*Id*. at ¶ 15 and ¶ 58.) When Mr. Rivera requested a single cell due to his difficulties with being housed with another inmate the PRC threatened him with a

misconduct if he reported any physical confrontations with his cellmate. (*Id.* at ¶ 15.) Defendants Walsh and Mooney also threatened to prolong Mr. Rivera's RHU stay if he continued to complain about being double celled. (*Id* at ¶ 16.) Deputy Walsh knew of Mr. Rivera's mental health history as he served as the Unit Manager of H-block, the Special Needs Unit, when Mr. Rivera lived on that block in a single cell. (*Id.*) Deputy Walsh refused Mr. Rivera's request for a single cell and told him there was nothing he could do since Governor Rendell and Secretary Beard had directed the staff to find additional bed space "by what ever means necessary." (*Id.*)

While still in the RHU, Mr. Rivera spoke to the institution's new psychiatrist, Dr. Jesse, about where he would be housed once released from the RHU. (*Id.* at ¶ 17.) She advised him that he would "most likely be returning back to population." (*Id.*) Dr. Jesse said she would recommend his placement on H-block, the Special Needs Unit, due to his mental health history and need for close mental health treatment but that she must confer with Unit Manager Goyne on the matter. (*Id.*) Later, Dr. Jesse reported to Mr. Rivera that Unit Manager Goyne decided to place him on L Block where he was housed prior to his RHU placement. (*Id.* at ¶ 17 and ¶ 19.)

Upon his release from the RHU, Mr. Rivera returned to L Block. Dr. Jesse saw him on March 27, 2009, and explained that although she recommended his placement on H block, the PRC "overruled her due to the need for bed space." (*Id.* at ¶ 19.) When Mr. Rivera inquired about being evaluated for medically necessary single cell, she said she "could not authorize a single cell for anyone" since the Pennsylvania Department of Corrections (DOC) was in the process of taking single cells to make more bed space. (*Id.*)

Mr. Rivera believes he was denied his psychotropic medications in order to justify the termination of his single cell status for the purpose of creating additional bed space at the facility. (*Id*. at ¶ 21.) He alleges that all defendants "acted with deliberate indifference to his constitutional rights" because he is a Hispanic prisoner suffering from mental illness. (*Id*. at ¶ 22.) He contends that the removal of his single cell status and deprivation of his psychotropic medication "has created a hazardous condition to this person." (*Id*.)

In accordance with the DOC's Reasonable Accommodations for Inmates with Disabilities policy, DC-ADM 006, Mr. Rivera submitted an accommodation request for a single cell due to his mental health issues to SCI-Dallas' Corrections Healthcare Administrator (CHCA), Mr. Leskowski. CHCA Leskowski told Mr. Rivera to resubmit his request on a specific form as the policy had changed. (*Id*. at ¶ 23.) After twenty days without a response to his renewed ADA accommodation request, Mr. Rivera started writing request slips, and sending letters, regarding his ADA request to various DOC officials. As of the filing of his Complaint, March 5, 2010, Mr. Rivera had not received an official response to his ADA request. (*Id*. at ¶ 38.)

Mr. Rivera charges that Governor Rendell instituted the policy of increasing cell space within the DOC at the risk of placing prisoners like himself in hazardous overcrowded conditions. As a result, his Eighth Amendment "rights" were violated as well as his "rights" under the ADA. Mr. Rivera personally sent correspondence to Governor Rendell to advise him of his plight. To his knowledge, no action was taken on these letters. (*Id*. at ¶ 39.) Mr. Rivera's theory of liability against Secretary Beard is similarly based. (*Id*. at ¶ 42.) Yet, Mr. Rivera alleges that Secretary Beard assigned James

Barnacle, the Director of the DOC's Office of Professional Responsibility, and John Johnson, the DOC's Classification System Supervisor for the Bureau of Treatment, to investigate his claims. (*Id.* at ¶¶ 44 and 46.) Mr. Rivera contends neither Mr. Barnacle nor Mr. Johnson properly investigated his claims. He asserts they are liable for acquiescing to the wrong doing of the other defendants.

Mark Dembert, M.D., is sued in his capacity as the DOC's Chief of Psychiatry for the Bureau of Health Care Services. (*Id.* at ¶ 45.) Dr. Dembert responded to a letter from Mr. Rivera on June 2, 2009, but failed to take any remedial action to alleviate Mr. Rivera's situation. (*Id.* at ¶ 45.) Dorina Varner, the Director of Office of Grievances and Appeals, is sued because of her perfunctory reviews of Mr. Rivera's grievances related to his mental health care. (*Id.* at ¶ 47.) CHCA Leskowski, Deputy Secretary Shirley R. Moore Smeal, Deputy Director Marc Goldberg, and Andrea Priori Meintel, the DOC's Director of the Bureau of Treatment Services, are sued for failing to process Mr. Rivera's ADA request. (*Id.* at ¶¶ 49 - 51, and ¶ 62.) Kathy Zwierznya, the DOC's Director of the Bureau of Standards and Security and Richard Ellers, the DOC's Director of the Bureau of Health Care Services, allegedly had knowledge of defendants' violation of DOC policies and their negative impact on Mr. Rivera but failed to take remedial action. (*Id.* at ¶¶ 53 - 54.)

Superintendent Klopotoski, Deputy Superintendent Demming and Deputy Superintendents Mooney and Walsh, were all aware of Mr. Rivera's conditions of confinement as they either played a role in processing Mr. Rivera's grievances or were involved in the March 20, 2009, PRC review. (*Id.* at ¶¶ 56 - 59.) However, they failed to remediate his conditions of confinement. (*Id.*) Robin Lucas, SCI-Dallas' Grievance

Coordinator, frustrated Mr. Rivera's grievance activities by failing to respond to them. (*Id.* at ¶ 60.)

Dr. Kale, a contract psychiatrist, is sued because he failed to reorder Mr. Rivera's medications in a timely manner. He was also aware of the DOC's intent to revoke Mr. Rivera's medically necessary single cell housing status but failed to stop it knowing the result would harm Mr. Rivera. (*Id.* at ¶ 63.) Dr. Mahich and Dr. Wittywat are sued for this reason as well.[4] (*Id.* at ¶¶ 64 - 65.) Nancy Taylor, the Mental Health Coordinator for SCI-Dallas, along with Richard Ellers, John Johnson and Mark Dembert "have a supervisory role" in the mental health treatment of SCI-Dallas inmates, and are responsible for the inadequate staffing of the mental health department at SCI-Dallas. (*Id.* at ¶ 66.)

Mr. Rivera claims no one conducted a psychological evaluation or review of his mental health status prior to revoking his single cell status. Due to this improper decision, Mr. Rivera was physically assaulted, attempted suicide, acquired an additional sentence, and was housed in overcrowded conditions. (*Id.* at ¶ 66.) Mr. Rivera claims he personally brought these issues to Mr. Buffton's attention, but the psychologist failed to take any action. (*Id.* at ¶ 67.) Psychologist Lopuhovsky, like Buffton, was aware of Mr. Rivera's fear of being double celled but failed to take action. (*Id.* at ¶ 68.) Dr. Jesse, is accused of being deliberately indifferent to his mental health needs by failing to ensure his placement in a single cell following his release from the RHU. Additionally, Mr. Rivera claims Dr. Jesse and Dr. Kale are not licensed psychiatrists and thus were not legally authorized to treat his mental health condition while they were employed at SCI-Dallas. (*Id.* at ¶¶ 69-70.)

---

[4] These defendants have not yet been served with a copy of the complaint due to Mr. Rivera's inability to provide an accurate address for service.

Ellen Lucas, who also has a role in providing Mr. Rivera with mental health care, is charged with failing to assist him retain his single cell status. (*Id*. at ¶ 71.)

Michael Goyne, is personally responsible for "making determinations regarding the housing status of plaintiff ... and acted deliberately indifferent to plaintiff's constitutional rights when ... revo[king] his single cell status." (*Id*.) Mr. Goyne allegedly did not follow proper procedures prior to revoking Mr. Rivera's single cell status. (*Id*.)

Mr. Rivera seeks injunctive relief in the form of reinstatement to his job in the mattress factory, and a return to his old cell (#24) on L-Block, as well as a permanent single cell. He also seeks a court ordered reduction of SCI-Dallas' inmate population and a "complete overhaul" of the institution's grievance, sheating, plumbing, and electrical systems. Finally, he seeks compensatory and punitive monetary damages from defendants in their individual and official capacities.

## III.    Standard of Review

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted). This inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently

alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  The court may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 1969 n. 8, 167 L.Ed.2d 929 (2007). Instead, the court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements.  *Id.* at 556, 127 S.Ct. at 1966.

"Pro se complaints are 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'"  *Jackson v. Div. of Dev. Disabilities*, 394 F. App'x 950, 951 n.3 (3d Cir. 2010)(nonprecedential)(quoted case omitted).  Nonetheless, the complaint still "must contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoted case omitted).  *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend.  *See Phillips v. Cnty of Allegheny*, 515 F.3d 224, 245-46 (3d Cir. 2008)(citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  However, dismissal without leave to amend is justified on grounds of bad faith, undue delay, prejudice, or futility.  *Alston,* 363 F.3d at 235-36.

# IV.    Discussion

## A.    The Commonwealth Defendants' Motion to Dismiss.[5]

### 1.    Mr. Rivera May Not Maintain Claims for Damages Against Prison Officials in their Official Capacities.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst v. Halderman,* 465 U.S. 89, 99-100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits brought against state officials acting in their official capacities are really suits against the employing government agency, and as such, are barred by the Eleventh Amendment.  *See Hafer v. Melo*, 502 U.S. 21, 25-27, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).  The Commonwealth of Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity.  *See* 42 PA. CONS. STAT. ANN. § 8521-8522.  The Governor and the Commonwealth of Pennsylvania Department of Corrections (DOC) are both part of the executive department of the Commonwealth of Pennsylvania.  *See* 71 PA. STAT. ANN. § 61.  Governor Rendell and all DOC's employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they are sued in their official capacities.  *See Will, supra; see also Lavia v. Pa. Dep't of* Corr., 224 F.3d 190, 195 (3d Cir. 2000).

---

[5]    The "Commonwealth Defendants" are: Governor Rendell, Secretary Beard, Barnacle, Dembert, Varner, Johnson, Moore Smeal, Goldberg, Priori Meintel, Zwierzyna, Ellers, Klopotoski, Demming, Mooney, Walsh, Lucas, Leskowsky, Lopuhovsky, Goyne, Sokalaski and McKeown.

Mr. Rivera sues the Commonwealth Defendants in both their official and individual capacities. *See* Doc. 1, Compl. at ¶¶ 39 - 74. He seeks injunctive, declaratory and monetary damages as relief. (*Id.*, at ECF pp. 40-41.)[6] The Commonwealth Defendants' argue that, to the extent Mr. Rivera is suing them in their official capacities, his claims for monetary damages must be dismissed. *See* Doc. 20, Defs.' Br., at ECF pp. 10-11. In his opposition brief Mr. Rivera concedes "that the DOC is an arm or agency of the Commonwealth," but that not all of the forms of relief he has requested are prohibited by the Eleventh Amendment. *See* Doc. 23, Opp. Br. at ECF pp. 16-17. Mr. Rivera is correct. The Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability for damages on state officials under 42 U.S.C. § 1983. *See Hafer,* 502 U.S. at 30-31, 112 S.Ct. at 364-65. Likewise, it does not bar claims for prospective injunctive relief brought against state officials in their official capacities. *See Iles v de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011).

Accordingly, Mr. Rivera's claim for monetary damages against the Commonwealth Defendants in their official capacities will be dismissed. However, his claim for prospective injunctive relief and his claims for monetary damages against the Commonwealth Defendants in their individual capacities will proceed.

---

[6] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

**2.     Mr. Rivera's Fails to State A Claim Against the Following Supervisory Commonwealth Defendants:  Rendell, Beard, Moore Smeal, Goldberg, Barnacle, Dembert, Priori-Meintel, Johnson, Ellers, Zwierzyna, Varner, Klopotoski, Demming, Mooney, Lucas and Leskowsky.**

The Commonwealth Defendants suggest that with "the exception of Defendant Walsh, Lopuhovsky, Goyne, Sokaloski and McKeown, Plaintiff does not allege that any of the Defendants in the instant action were personally involved in any of the claimed violations."  Doc. 20, Corr. Defs.' Br. at p. 15.  Mr. Rivera counters that his Complaint outlines the personal involvement of all defendants, including many supervisors who acquiesced to their subordinates' constitutionally violative acts when they were made aware of his plight and then refused to assist him in obtaining continued psychiatric care, or a single cell due to his mental health issues.  (Doc. 18, Opp'n. Br. at ECF pp. 18 - 23.)

Under § 1983, an individual may sue state actors to enforce federal statutory and constitutional rights.  *See* 42 U.S.C. § 1983.  To succeed on a § 1983 claim, an individual must prove that:  (1) the conduct in question was committed by an individual acting under the color of state law, and, (2) the conduct deprived the claimant of a constitutional right.  *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 46 L.Ed.2d 561 (1976); *Harvey v. Plains Tp. Police Dept.*, 421 F.3d 185, 189 (3d Cir. 2005).  Section 1983 will not support a claim based on *respondeat superior* or vicarious liability.  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Personal involvement is an essential element of a civil rights action.  *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).  Each defendant must have personal involvement in the alleged wrongs, which may be shown through allegations of personal direction or of actual

knowledge and acquiescence in the challenged practice.  *Iqbal*, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49.[7]  "In a § 1983 suit ... masters do not answer for the torts of their servants."  *Id.*  Thus, the mere assertion "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did" is insufficient to establish liability.  *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

### i.    Defendant Mooney

Defendants assert that Mr. Rivera has failed "to set forth even most basic averments against Defendant Mooney."  Doc. 20 at ECF p. 15.  Although Mr. Rivera does not directly address this issue, the allegations of this *pro se* Complaint contradict the defendants' assertion.  Mr. Rivera's allegations that Deputy Mooney, via his role in the grievance process, acquiesced to the alleged unconstitutional actions of others, fail to state a claim.  These allegations are not supported by facts showing Deputy Mooney's "affirmative part" in the complained of misconduct.  *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).   Although quite lengthy and detailed, there are no facts in the

---

[7]  The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test.  *Santiago*, 629 F.3d at 130 n. 8; *see, e.g., Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated—or at least narrowed the scope of—supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bayer v. Monroe Cnty. Children and Youth Servs.*, 577 F.3d 186, 190 n. 5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.)  Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.  *Williams v. Lackawanna Cnty. Prison*, Civ. No. 07–1137, 2010 WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Complaint demonstrating Deputy Mooney personally directed any defendant to withhold medically prescribed or necessary psychiatric care from Mr. Rivera in the form of medication or a housing assignment. Likewise, it is not alleged he had actual knowledge of these alleged events and acquiesced to it at the time they occurred. The same is true with respect to his lack of involvement in Mr. Rivera's disciplinary proceeding and processing of his ADA request. Accordingly, Mr. Rivera's threadbare allegations of Deputy Mooney's personal involvement in these events are insufficient to satisfy the *Iqbal* and *Twombly* pleading standards and thus will be dismissed.

### ii. Defendants Governor Rendell and Secretary Beard

Plaintiff avers that Governor Rendell developed, and Secretary Beard implemented, a policy which led to the revocation of his single cell status which in turn negatively impacting his mental health. Mr. Rivera describes Governor Rendell's policy as one requiring SCI-Dallas officials to find additional bed space within the facility so it could accommodate a larger inmate population. There is no suggestion that either supervisory defendant was personally involved in the selection of which inmates were to have their single cell status revoked, or ordered their subordinates to deny any inmate, including Mr. Rivera, a single cell if necessary for medical, mental health or security reasons. Likewise, there is no suggestion that the policy changed, or the defendants directed, or had contemporary knowledge that Mr. Rivera's psychiatric medication was stopped, or that his single cell status was revoked until after the fact. In fact, Mr. Rivera states he notified these individuals of his plight after local prison officials revoked his single cell status.

Likewise, there are no allegations that either defendant interfered in any way in the medical or psychiatric care that Plaintiff was prescribed or received. Thus, Mr. Rivera has failed to allege any affirmative link between these supervisory defendants and the alleged constitutional violations he experienced. Furthermore, to the extent Mr. Rivera asserts that either defendant is liable because they failed to take corrective action once alerted to the alleged constitutional deprivations via correspondence, these allegations are insufficient to constitute the personal involvement necessary to maintain a section 1983 claim. *See Iqbal*, 566 U.S. at 677, 129 S.Ct. at 1949. Aside from his assertion he was improperly stripped of his single cell status by SCI-Dallas staff members, Mr. Rivera fails to demonstrate Governor Rendell or Secretary Beard's personal knowledge or involvement in his allegations that his mental health needs were not being properly addressed by SCI-Dallas staff or treating physicians. Accordingly, Mr. Rivera fails to state a claim against Governor Rendell or Secretary Beard. Given the solely supervisory roles of these defendants, it is clear that allowing an amendment of the claims against these defendants would be futile.

     **iii.    Defendants Priori-Meintel, Zwierzyna, Ellers, Klopotoski, Demming, and Leskowsky**

Defendants assert that defendants Priori-Meintel, Director of Treatment; Zwierzyna, Director of Standards and Security; and Ellers, Director of Health Care Services are sued on the basis of their roles as "Directors" of their respective bureaus within the DOC. *See* Doc. 1 at ¶¶ 51, 53 and 54. Mr. Rivera alleges these defendants had a duty to investigate and correct the policies and practices that he claims directly

endangered his life. He claims their failure to do so demonstrates their deliberate indifferent to his medical and mental health conditions. (*Id.* at ¶¶ 51-55.) The allegations against these defendants, in their capacities as Bureau Directors, are general and conclusory. They do not satisfy the requirements that these supervising officials personally participated in the alleged wrongful activity. There is no indication that these defendants played a role in medical decisions related to Mr. Rivera, or the decision to revoke his single cell status, decisions that Mr. Rivera states were made at the local institutional level. Given the solely supervisory roles of these defendants, it is clear that allowing an amendment of the claims against these defendants would be futile. Accordingly, the claims against Priori-Meintel, Zwierzyna and Ellers will be dismissed.

Next, defendants seek dismissal of all claims against Superintendent Klopotoski, and Deputy Demming. (Doc. 20 at CM/ECF p. 16.) Plaintiff's claims against these defendants are based on their failure to see that Governor Rendell's policy was implemented in a manner that would not violate his Eighth Amendment rights and because of their involvement in processing his prison grievances. (Doc. 1 at ¶ 56-57.) As previously noted, generally allegations of a defendant's involvement in the processing of a prison grievance fails to demonstrate the defendant's personal involvement in the alleged constitutional misconduct. *Rode*, 845 F.2d at 1208. Moreover, these defendants are prison administrators and cannot be considered to be deliberately indifferent to Mr. Rivera's medical and/or mental health needs when they know him to be under the care and treatment of prison doctors. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d

-18-

218, 236 (3d Cir. 2004)(discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236. Mr. Rivera does not allege that these defendants played a role in the implementation of Governor Rendell's directive to review single cell assignments to find additional bed space within the facility. Likewise, he does not suggest that they had contemporaneous knowledge that the decision to revoke his single cell status or that doing so would be detrimental to his well being. Thus, the Complaint fails to state a cognizable claim against either Superintendent Klopotoski or Deputy Demming. Given the solely supervisory roles of these defendants, it is clear that allowing an amendment of the claims against these defendants would be futile.

Next, Mr. Rivera alleges that CHCA Leskowsky had personal knowledge and participated in the violations set forth in the Complaint as he was part of the "systemic mindset" of deliberate indifference to his conditions of confinement. (Doc. 1 at ¶ 62.) Mr. Rivera, however, fails to plead that CHCA Leskowsky, an administrator, had a reason to believe (or actual knowledge) that medical personnel were mistreating, or failing to properly treat his mental health needs, or that the revocation of his single cell status was contraindicated, or that Dr. Kale failed to renew his psychotropic medications. He also does not allege that CHCA Leskowsky had any reason to believe that following his release from the RHU there was a valid physician order requiring his placement in a single cell for mental health purposes, or that such an order existed and was being ignored by corrections officials. Thus, Mr. Rivera fails to state a claim against CHCA Leskowsky based on his role as the institution's Corrections Health Care Administrator.

-19-

### iv. Defendants Barnacle, Dembert, and Johnson

Mr. Rivera alleges that Defendants Barnacle, Dembert and Johnson failed to properly investigate his claims regarding the revocation of his single cell status. (Doc. 1, Compl. at ¶¶ 44-46.) The defendants failure to investigate Mr. Rivera's complaints, as alleged in the Complaint, is not a constitutional violation. An allegation of failure to investigate an event after the fact, without another recognizable constitutional right, is not sufficient to sustain a § 1983 claim. *See Graw v. Fantasky*, 68 F. App'x 378, 373 (3d Cir. 2003). It is well established that Mr. Rivera does not have a liberty interest to a single cell. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2391, 69 L.Ed.2d 59 (1981). Accordingly, their failure to investigate his alleged Eighth Amendment claims based on the revocation of his single cell status fails to state a cognizable claim against these defendants.

### v. Defendants Varner and Lucas

Mr. Rivera seeks to hold defendants Varner and Lucas liable for their failure to respond to, or investigate, his various grievances. (*Id.*, ¶¶ 47-48 and ¶ 60.)

The filing of a prison grievance is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x. 155, 156–57 (3d Cir. 2006). Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. *Booth v. King*, 346 F.Supp.2d 751, 761 (E.D.Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. *Burnside v. Moser*, 138

Fed.Appx. 414, 416 (3d Cir. 2005) (citations omitted) (failure of prison officials to process administrative grievance did not amount to a constitutional violation). Additionally, it is well-established that "a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right." *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (citing *Rode*, 845 F.2d at 1207–08; *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006). Thus, because the involvement of these defendants is limited to their involvement in the grievance procedure, the Complaint against these defendants will be dismissed.

### 3. Mr. Rivera's Due Process Claims.

### i. Claims Against Defendants Moore-Smeal, Goldberg and Prior-Meintel for the Processing of his ADA Claim.

Mr. Rivera claims that his mental health issues qualify him as "disabled" under the ADA[8] and that Defendants Moore-Smeal, Goldberg and Prior-Meintel's failure to ensure that his ADA[9] claim was timely processed, and adjudicated in his favor, violates his Due

---

[8] The ADA defines the term "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (2) a record of such impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

[9] The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability. 42 U.S.C. § 12132. Title II of the ADA states, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, a claim under the ADA requires that: (1) the plaintiff has a disability; (2) the plaintiff is otherwise qualified for the program sought or would be qualified if the defendant made reasonable modifications to the program; and (3) the plaintiff was excluded from the program solely by reason of his or her disability. *See Brown v. Deparlos,* No. 12-1217, 2012 WL 2512014, at *3 (3d Cir. July 2, 2012). Title II of the ADA applies to state prisons.

(continued...)

Process rights.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. *See Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Asquith v. Department of Corrections*, 186 F.3d 407, 409 (3d Cir.1999).

In this instance, the Court concludes that Mr. Rivera has failed to identify a liberty or property interest protected by the due process clause which Moore-Smeal, Goldberg or Prior-Meintel withheld from him or violated. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). As noted earlier, inmates do not have a liberty interest in being single celled. *See Rode, supra*. The fact that the DOC has a policy for inmates to follow when seeking an ADA accommodation does not create a liberty interest in receiving such a response pursuant to that policy. *See Brooks v. Horn*, No. Civ. A. 00-3637, 2004 WL 764385 (E.D. Pa. Apr. 7, 2004)(same). Likewise, "the failure of prison officials to follow DOC policy does not, in and of itself, result in violation of due process." *Tarselli v. Harkleroad,* Civ. A. No. 10-1266, 2012 WL 603219, *7 (W.D. Feb. 23, 2012). Accordingly, Defendants Moore-Smeal, Goldberg and Priori-Meintel did not violate Mr. Rivera's due process rights in failing to review, timely consider, or grant his ADA request. Next, it is noted that Mr. Rivera does not allege that any of these individuals

---

[9](...continued)
*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 1954-55, 141 L.Ed.2d 215 (1998). Mr. Rivera does not allege any discriminatory conduct based on his disability. Mr. Rivera has not demonstrated that he was discriminated against as a result of his alleged disability (his mental health problems) where other prisoners with different disabilities, or no disabilities at all, were provided with single-cells after Governor Rendell's direction to increase cell space within the institution. Accordingly, he has failed to state an ADA claim.

personally denied him medical or mental health care, or were otherwise involved with his cell assignment prior to or following his release from the RHU.  Thus, he fails to allege their personal involvement in those decisions.  *See Rode*, 845 F.2d at 1207.


### ii.     Claims Against Defendant Hearing Examiner McKeown Related to his Misconduct Hearing.

On December 23, 2008, after setting his cell ablaze, Mr. Rivera was given a misconduct for arson and the destruction of property.  Five days later, he pled guilty to these charges and received a penalty of 90 days in disciplinary custody.  (*Id*. at ¶ 9.)  Mr. Rivera claims that at the time of his misconduct hearing he "was experiencing severe psychological episodes ... and was not coherent enough to enter an (sic) defense or competent plea" at the hearing.  (*Id*. at ¶ 9.)  He claims that Hearing Examiner McKeown violated his Due Process rights when he failed to allow another inmate to assist him during the course of his misconduct hearing or to call witnesses when he knew Mr. Rivera was clearly suffering from mental illness.  (*Id*. at ¶ 74.)

The United States Supreme Court has held that prison disciplinary proceedings are not part of a criminal prosecution, and as such, inmates are not entitled to the full panoply of due process rights due a criminal defendant.  *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).  To assert a right to procedural due process, Plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment.  *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  In Mr. Rivera's situation, he must show he had a "liberty interest in remaining free of disciplinary custody."  *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003).  If he had no such interest,

no process was owed him.  *Id.*  This kind of liberty interest is not shown unless Plaintiff

establishes that his placement in restricted housing imposed an "'atypical and significant

hardship'" on him "'in relation to the ordinary incidents of prison life.'"  *Id.* (quoting *Sandin,*

*515 U.S. at 484, 115 S.Ct. at 2300*).  To determine if Plaintiff's placement was atypical, we

consider "the following two factors: 1) the amount of time the prisoner was placed into

disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary

segregation were significantly more restrictive than those imposed upon other inmates in

solitary confinement."  *Shoats,* 213 F.3d at 144.  Thus, in determining whether a particular

form of prison discipline presents an "atypical and significant hardship," a court considers

what a sentenced inmate may reasonably expect to encounter as a reuslt of his or her

conviction in accordance with due process of law."  *Asquith v. Dep't of Corr.*, 186 F.3d

407, 412 (3d Cir. 1999)(quoting *Griffin v. Vaughn*, 122 F.3d 703, 706 n.2 (3d Cir. 1997)).

As a result, the proper focus is on the nature of the deprivations itself.  *Sandin*, 515 U.S.

at 481-82, 115 S.Ct at 2299.

Applying these legal benchmarks, it has been held that disciplinary proceedings

which result in sanctions of disciplinary segregation for six months or more do not give rise

to due process claims.  *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002)(7 months

disciplinary confinement).  Likewise, "[l]iving in a double-cell is an expected ordinary

incident of prison life, [and] retaining single-cell status is not a protected liberty interest."

*Austin v. Chesney*, No. 9304010, 1995 WL 498720, at *3 (E.D. Pa., Aug. 22, 1995).

Therefore, as a threshold matter, to the extent that Mr. Rivera advances a due process

argument against Hearing Examiner McKeown, he has not articulated a liberty interest

sufficient to trigger a valid due process claim as a result of his 90 day confinement in the RHU.  *See* Doc. 1 at ¶ 6.   Finally, to the extent Mr. Rivera attempts to lodge an Eighth Amendment claim against Hearing Examiner McKeown because he was double celled following his misconduct hearing, he fails to allege his personal involvement in this decision.  *See Rode,* 845 F.2d 1207.  Mr. Rivera fails to allege that Hearing Examiner McKeown played any role in the decision as to where he would be placed in the RHU or whether he would be double celled while housed in the RHU.  Accordingly, Mr. Rivera's claims against Hearing Examiner McKeown must be dismissed.

### B.    The Medical Defendants' Motion to Dismiss.[10]

To establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden City. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).   A finding of deliberate indifference must be based on what an official actually knew, rather than what a reasonable person should have known.  *See Beers–Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

---

[10]  The medical defendants are:  Drs. Jesse and Kale.  *See* Doc. 15, Mot. to Dismiss.

An inmate's mere disagreement with medical professionals "as to the proper medical treatment" of his medical complaint does not support an Eighth Amendment violation. *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Likewise, a claim that a doctor or medical department was negligent does not rise to the level of an Eighth Amendment violation simply because the patient is a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107, 97 S.Ct. at 293. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Spruill*, 372 F.3d at 235; *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Finally, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

Judged against these standards, the Court finds that Mr. Rivera's claims against Dr. Jesse fail because he has not alleged any deliberate indifference to his needs on behalf of this health care provider. Quite to the contrary, the only allegations as to Dr. Jesse affirm that she recommended his placement on the special needs unit due to his mental health problems but that the PRC did not concur with her recommendation.

Unsuccessfully making a favorable medical recommendation for an inmate simply does not rise to the level of deliberate indifference to that prisoner's needs. Therefore, Mr. Rivera's claims as to this care giver fail as a matter of law.

As to Dr. Kale, Mr. Rivera asserts that he was deliberately indifferent to his serious mental health needs when he repeatedly failed to renew his psychotropic medications and failed to ensure they were reordered before he permanently left SCI-Dallas. (Doc. 1, Compl. at ¶¶ 1-3.) At the motion to dismiss stage, we find that disputed issues of fact preclude dismissal of this claim at the present time. While Mr. Rivera's pleadings suggest that he did receive some form of treatment from this defendant while in prison, it is alleged mental health was adversely impacted due to the disruption of his receipt of his psychotropic medications and that Dr. Kale was responsible for this disruption. At this stage of the proceedings, an assessment of the nature and fulfillment of this obligation to reorder Mr. Rivera's psychotropic medication is not possible. Rather, this assessment would entail a consideration of facts beyond the pleadings, something which can only be done in a properly documented motion for summary judgment and must await another day. Accordingly, for these reasons, the medical defendants' motion to dismiss will be denied with respect to Dr. Kale.

### 4. Mr. Rivera's Motion to Amend.

The filing of an Amended Complaint before trial is governed by Fed. R. Civ. P. 15(a):

> (1) Amending as a Matter of Course. A party may amend its
> pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). Mr. Rivera's Motion to Amend the Complaint (Doc. 70) seeks to add three new defendants and a new claim of retaliation for events that occurred almost two years after the filing of his original complaint. (Doc. 70, Mot. to Amend. the Compl.) He alleges that three non-defendants transferred him from the Special Needs Unit to a general population housing unit without his consent and issued him a retaliatory misconduct because of his filing of the present action. (*Id.*)

Based on the procedural history of this case, Plaintiff no longer has the option to file an amended complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). While the Court may freely grant leave to amend a complaint, based on Mr. Rivera's failure to file a brief in support of his motion to amend[11] and his failure to file a proposed amended complaint,[12] the Court cannot determine if the proposed amendment has merit. Thus, the motion to amend will be denied.

---

[11] M.D. Pa. Local Rule 7.5 required Mr. Rivera to file a brief in support of his motion to amend. *See* M.D. Pa. Local Rule 7.5.

[12] A proposed amended complaint must accompany a motion requesting leave to amend a complaint. *See* M.D. Pa. Local Rule 15.1.

**V.     Conclusion**

For the foregoing reasons, the Commonwealth Defendants' motion to dismiss will be granted as to defendants Rendell, Beard, Moore-Smeal, Goldberg, Barnacle, Dembert, Prior-Meintel, Johnson, Ellers, Zwierzyna, Varner, Klopotoski, Demming, Mooney, Lucas, Leskowsky and McKeown.  As the Commonwealth defendants did not seek dismissal of the claims against Walsh, Goyne, Lopuhovsky and Sokaloski, claims against these Commonwealth defendants in their individual capacities remain.  The medical defendants' motion to dismiss will be granted in part and denied in part.  The Eighth Amendment claims against Dr. Jesse are dismissed.  The motion to dismiss as to Dr. Kale is denied. Finally, Mr. Rivera's Motion to Amend will be denied.

An appropriate Order follows.

**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:  April 1, 2013**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERTO C RIVERA,**          :
:
     **Plaintiff**          :
:          **CIVIL NO. 3:CV-10-0505**
  **v.**          :
:          **(Judge Caputo)**
**GOVERNOR ED RENDELL,** *et al.,*          :
:
     **Defendants**          :

# O R D E R

**AND NOW**, this **1st** day of **APRIL, 2013,** in accordance with the accompanying

Memorandum, it is **ORDERED** that:

1.   The Commonwealth Defendants' Motion to Dismiss (Doc. 13) is **GRANTED**.

2.   All supervisory liability claims against defendants Rendell, Beard, Moore-Smeal, Goldberg, Barnacle, Dembert, Prior-Meintel, Johnson, Ellers, Zwierzyna, Varner, Klopotoski, Demming, Mooney, Lucas, and Leskowsky are **DISMISSED**.

3.   All due process claims against defendants Moore-Smeal, Goldberg, Prior-Meintel and McKeown are **DISMISSED**.

4.   Commonwealth Defendants Walsh, Goyne, Lopuhovsky and Sokaloski are granted twenty-one (21) days from the date of this Order to file an Answer to the Complaint.

5.   The Medical Defendants' Motion to Dismiss (Doc. 15) is **GRANTED** in part and **DENIED** in part.

6.   The Eighth Amendment deliberate indifference claims against Dr. Jesse are **DISMISSED**.

7. The motion to dismiss the Eighth Amendment deliberate indifference claims against Dr. Kale is **DENIED**.

8. Dr. Kale is granted twenty-one (21) days from the date of this Order to file an Answer to the Complaint.

9. Mr. Rivera's Motion to Amend the Complaint (Doc. 70) is **DENIED.**

**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**