# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERTO C. RIVERA,

    Plaintiff,

        v.

GOVERNOR ED RENDELL, *et al.*,

    Defendants.

NO. 3:10-CV-0505

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion for Summary Judgment (Doc. 245) filed by Defendant Jerome Walsh ("Walsh"). Plaintiff Roberto C. Rivera ("Rivera"), an inmate incarcerated at the State Correctional Institution in Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil rights action *pro se* against various prison officials for the alleged deprivation of his constitutional rights related to the loss of his single cell status. The sole cause of action remaining in this case is Rivera's claim that Walsh was deliberately indifferent to his serious mental health needs when Walsh failed to reinstate his single cell status in March 2009. Because the record is devoid of evidence that Walsh was deliberately indifferent to Rivera's serious mental health needs, the motion for summary judgment will be granted.

## I. Background

Rivera is a Department of Corrections ("DOC") inmate serving a life sentence. (*See* Doc. 247, Defendant's Statement of Material Facts ("Def.'s SMF"), ¶ 1; Doc. 253, Plaintiff's Statement of Material Facts ("Pl.'s SMF"), ¶ 1).[1] In March 2009, the

---

[1]    Although Rivera filed a response to Walsh's factual statement, it fails to comply with the requirements of M.D. Pa. L.R. 56.1. *See* M.D. Pa. L.R. 56.1 ("Statements of material fact . . . in opposition to[ ] a motion shall include references to the parts of the record that support the statements."). While Rivera "denies" many of the facts in Walsh's statements, he does so solely on the following ground: "the Statement contained no material factual allegations.

time relevant to the claim remaining this action, Walsh was the Deputy Superintendent for Centralized Services at SCI-Dallas. (Doc. 136-3, Walsh Decl., ¶¶ 1-2).

In April 2005, Rivera was granted a "Z" housing code ("Z Code"). (*See* Def.'s SMF, ¶ 3; Pl.'s SMF, ¶ 3).[2] Walsh, a Unit Manager at the time, participated in the decision to recommend a Z Code for Rivera. (*See* Walsh Decl., ¶¶ 3, 5). Z Code was recommended because Rivera was exhibiting paranoid behaviors that may have posed a threat to a cellmate. (*See id*. at ¶ 6).

The criteria for obtaining a Z Code is set forth in Policy 11.2.1, Section (5)(C), which provides that an inmate who meets "any of the following criteria shall be carefully reviewed by staff and considered for Program Code 'Z' housing classification": (A) inmates who are evaluated by psychiatric or psychological staff as having mental health problems (examples of mental health problems include conditions where the inmate is dangerous to self, dangerous to others, is self-mutilative, unable to care for self, and/or where the inmate is being actively monitored by the Psychological Review Team (PRT)); (B) inmates with medical conditions indicating a possible need for a single cell (infectious disease, colostomy, etc.); (C) inmates who staff believe may be victimized as a result of double celling; (D) inmates who have a documented history of predatory behavior toward cell partners or who staff has reason to believe would exhibit assaultive or predatory behavior towards cellmates; and (E) inmates with known or documented homosexual behavior. (Def.'s SMF, ¶ 5; Pl.'s SMF, ¶ 5). That policy further provides that Z Code "is not necessarily a permanent status. An inmate who is classified with a 'Z' Code shall be

---

Therefore no response is required to Defendant Walsh's interpretations, arguments, legal conclusions or non-factual statements. To the extent that the Defendant Walsh contends there is no genuine issue to be tried, there exists a genuine issue to be tried. (Pl.'s Dep.)." (Pl.'s SMF, *generally*).

[2] Z Code is a housing code that affords an inmate a single cell, *i.e.*, the inmate is not assigned a cellmate. (*See* Walsh Decl., ¶ 7).

reviewed at least annually and at any other staffing to insure the code is still the most appropriate housing classification." (Doc. 136-3, 26).

On December 16, 2008, Rivera's Z Code status was reviewed by his unit management team. (*See* Def.'s SMF, ¶ 20; Pl.'s SMF, ¶ 20). That review was attended by, among others, Rivera's counselor, psychologist, and unit manager. (*See* Doc. 136-3, 62). During that review, the psychologist noted that Rivera was stable, doing well, and was no longer on any psychotropic medication. (*See* Def.'s SMF, ¶ 21). The reviewing staff on December 16, 2008 supported removal of Rivera's Z Code. (*See* Doc. 136-3, 62). Walsh, as Deputy Superintendent, reviewed the recommendation and concurred in the removal of Rivera's Z Code. (*See* Def.'s SMF, ¶ 26). Superintendent Klopotoski then made the final decision to remove Rivera's Z Code. (*See id*. at ¶ 27). On December 23, 2008, Rivera was informed by his counselor, Thomas Sokaloski, that his Z Code was removed. (*See* Def.'s SMF, ¶ 28; Pl.'s SMF, ¶ 28)

Shortly thereafter, Rivera set his cell on fire. (*See* Def.'s SMF, ¶ 29). Based on his statements that he was having suicidal thoughts, Rivera was admitted to a psychological observation cell. (*See id*. at ¶ 30; *see also* Pl.'s SMF, ¶ 30). Rivera was interviewed by Dr. Kasayapanand on December 24, 2008, and he noted that Rivera was not psychotic and would not answer questions about suicidal ideation. (*See* Def.'s SMF, ¶ 32). Dr. Kasayapanand concluded that Rivera suffered from major depressive disorder and that "this is a protest gesture about Z Code." (*Id*.). Dr. Kasayapanand spoke with Rivera two days later, and he similarly noted that the "bone of [Rivera's] contention was his Z Code." (*Id*. at ¶ 34).

Rivera was confined in the Restricted Housing Unit ("RHU") after his release from the psychological observation cell. (*See id*. at ¶ 35; Pl.'s SMF, ¶ 35). At a misconduct hearing for lighting his cell on fire, Rivera pled guilty to two charges and was sanctioned 90 days of disciplinary custody and assessed the costs associated with the fire. (*See* Def.'s SMF, ¶¶ 36-37; Pl.'s SMF, ¶¶ 36-37).

3

While in the RHU, Rivera was seen by mental health professionals, including on December 31, 2008, January 12, 2009, January 28, 2009, February 23, 2009, and March 9, 2009. (*See* Def.'s SMF, ¶¶ 39-40, 42,44, 47).

On March 20, 2009, Rivera was seen by the Program Review Committee ("PRC") to review his confinement in the RHU. (*See* Def.'s SMF, ¶ 49; Pl.'s SMF, ¶ 49). Walsh was one of three prison officials participating in the PRC. (*See* Def.'s SMF, ¶ 50; Pl.'s SMF, ¶ 50). Rivera was advised at the PRC review that he would be released to general population on March 22, 2009 upon completion of his disciplinary custody. (*See* Def.'s SMF, ¶ 51). According to the PRC's review notes, Rivera "was advised by PRC that based on his not meeting the criteria for single celling he would have to be double celled." (Doc. 136-3, 41). Rivera agreed to be double celled with his cousin who was also housed on L-Block. (*See id*.). Rivera was further informed that "his unit team would continue to monitor his progress in an effort that he would make a successful transition back to population." (*Id*.).

During Rivera's time in the RHU and after his release to general population, Walsh understood that Rivera was being monitored by mental health professionals. (*See* Def.'s SMF, ¶ 55). None of Rivera's "treating mental health providers informed [Walsh] that [Rivera] required placement in a single cell to address mental health concerns." (Walsh Decl., ¶ 33).

Based on the foregoing, Rivera commenced this action against twenty-six (26) defendants for various reasons related to the loss of his single cell status. (*See* Doc. 1, *generally*; *see also* Doc. 73, *generally*). Following decisions on motions to dismiss and motions for summary judgment filed by the defendants, only one claim remains in this action: Rivera's Eighth Amendment claim that "Walsh was deliberately indifferent to his serious mental health needs in March 2009 when failing to reinstate his Z Code." (Doc. 171, ¶¶ 6-7).

After additional discovery took place on that claim, Walsh, on July 31, 2017, filed the instant motion for summary judgment. (*See* Doc. 245, *generally*). That

motion has been fully briefed and is now ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553. If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

As stated, the only claim remaining is whether Walsh was deliberately indifferent to Rivera's serious mental health needs when he did not reinstate Rivera's Z Code status upon his release from the RHU in March 2009. Rivera's claim, brought pursuant to 42 U.S.C. § 1983, is for an alleged violation of the Eighth Amendment to the United States Constitution's prohibition on "cruel and unusual punishment." U.S. Const. amend. VIII.

The Eighth Amendment "requires prison officials to provide basic medical treatment" for those "incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). To establish an Eighth Amendment claim based on inadequate medical care, an inmate must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). A plaintiff must make both an "objective" showing that the deprivation was "sufficiently serious," as well as a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "A mental illness may constitute a serious medical need." *Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 111 (3d Cir. 2007) (citing *Inmates of the Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979)).

Walsh is entitled to summary judgment on Rivera's remaining claim. To begin, "the denial of Z-code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation." *Mattis v. Dep't of Corr.*, No. 16-306, 2017 WL 6406884, at \*12 (W.D. Pa. Dec. 15, 2017) (citing *Gellock v. Prison Health Servs., Inc.*, 07-008, 2009 WL 2038235, at \*8 (W.D. Pa. July 8, 2009)).

Moreover, there is no genuine issue of material fact as to whether Rivera had a serious medical need or whether Walsh acted with deliberate indifference to that

need. While Rivera was classified as Z Code for over three (3) years, the evidence of record indicates that in December 2008 Rivera's Z Code status was reviewed and it was determined that there was no basis for continuing a single cell classification. (*See* Doc. 132-2, 67). Included in that review was Rivera's psychologist who recommended removal of Rivera's Z Code status. (*See id.*; *see also* Doc. 136-3, 62). Thereafter, before Rivera was released from the RHU, Walsh reviewed Rivera's confinement as part of the PRC and none of Rivera's mental health providers recommended that Rivera be placed in a single cell to address mental health concerns. (Walsh Decl., ¶ 33). Given this, the record does not support a finding that Rivera had a serious medical health need requiring the continuation of Z Code status. *See*, *e.g.*, *James v. Sauers*, No. 14-69, 2018 WL 1178370, at *7 (W.D. Pa. Jan. 30, 2018) ("There is no evidence that Plaintiff had a serious medical need that required Plaintiff's preferred treatment of the continuation of his Z-code status.").

Rivera also fails to identify any evidence showing that Walsh was deliberately indifferent to his mental health needs. This requires Rivera to show that Walsh "subjectively acted with a sufficiently culpable state of mind." *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).

> But to demonstrate a defendant's deliberate indifference an inmate need not show that the defendant intentionally sought to cause the inmate harm or acted with knowledge that harm to the inmate probably would result from the defendant's act or failure to act. Though purposeful conduct would show at least deliberate indifference, an inmate satisfies her burden to make that showing if she demonstrates that the defendant acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm.

*Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 217 (3d Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 835-36, 842, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994)). Here, Rivera argues that Walsh was deliberately indifferent in failing to reinstate his Z Code because (1) Walsh recommended Rivera for Z Code in 2005 and (2) Walsh did not review Rivera's medical records in March 2009 as part of the PRC.

These facts do not demonstrate deliberate indifference on behalf of Walsh. For one, prison policy makes clear that Z Code "is not necessarily a permanent status. An inmate who is classified with a 'Z' Code shall be reviewed at least annually and at any other staffing to insure the code is still the most appropriate housing classification." (Doc. 136-3, 26). The record evidence confirms that Rivera was monitored and assessed by mental health professionals after he was granted a Z Code in 2005. (*See* Def.'s SMF, ¶ 13). Subsequently, in 2008 after Rivera reported to medical staff on multiple occasions that he was doing well, not having anxiety or suicidal thoughts, and had his pyschotropic medicine discontinued, (*see id*. at ¶¶ 14-19), Rivera's Z Code status was reviewed by his unit management team, at which the members, including a psychologist, recommended the removal of the Z Code. (*See id*. at ¶¶ 20-25). Thus, Walsh's recommendation of a Z Code for Rivera in 2005 does not demonstrate that he was deliberately indifferent four (4) years later when he failed to find that Rivera no longer satisfied the criteria for Z Code.

Further, that Walsh did not review Rivera's medical records is of no moment. The record evidence demonstrates that none of Rivera's treating mental health providers informed Walsh that Rivera required placement in a single cell to address mental health concerns in 2009. (*See* Walsh Decl., ¶ 33). Other evidence of record indicates that in making his recommendation in March 2009, Walsh relied on input from mental health professionals and his understanding that Rivera was continuing to be treated by mental health staff. (*See* Doc. 238, 5 (Supplemental Interrogatory Response)). Based on this, Rivera is unable to show that Walsh had knowledge that his failure to reinstate Rivera's Z Code would subject Rivera to a substantial risk of serious harm. At its core, Rivera's claim is based on a disagreement with the medical professionals' assessment of his mental health condition (and Walsh's reliance on that assessment when he found that Rivera did not meet the criteria for a Z Code in March 2009). But such a disagreement does not amount to deliberate indifference. *See*, *e.g.*, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("mere disagreement as to the

proper medical treatment" is insufficient to establish an Eighth Amendment claim");
*Henry v. Wilson*, No. 05-648, 2007 WL 2746717, at *6 (W.D. Pa. Sept. 17, 2007)
("Plaintiff merely disagrees with the medical department's assessment of his
psychological concerns.   Such disagreement does not exhibit deliberate
indifference.").  And, a "'non-medical prison official' cannot 'be charged with the
Eighth Amendment scienter requirement of deliberate indifference' when the 'prisoner
is under the care of medical experts' and the official does not have 'a reason to believe
(or actual knowledge) that prison doctors or their assistants are mistreating (or not
treating) a prisoner.'"  *Pearson v. Prison Health Servs.*, 850 F.3d 526, 543 (3d Cir.
2017) (quoting *Spruill*, 372 F.3d at 236); *see also George v. Pennsylvania Dep't of
Corrs.*, No. 09-1202, 2010 WL 936778, at *7 (M.D. Pa. Mar. 11, 2010) ("Mr. George
fails to assert how the DOC defendants were deliberately indifferent to his medical
needs when he acknowledges that they relied upon his treating physician and
psychologist's statements that a Z code was not medically necessary to deny his
request for single cell.  As such, Plaintiff fails to allege any facts to suggest that the
DOC defendants, who are not physicians, knew or should have known that the medical
treatment he was receiving from the medical staff was inadequate or put him at
substantial risk of harm simply because he was not awarded a Z code for medical
reasons.").  Walsh is entitled to summary judgment on Rivera's remaining claim.

## IV. Conclusion

For the above stated reasons, Defendant Walsh's motion for summary judgment
will be granted.

An appropriate order follows.


August 2, 2018                                  /s/ A. Richard Caputo
Date                                         A. Richard Caputo
                                             United States District Judge